UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSE SWANSON,

          Plaintiff,

   v.

COUNTY OF CONTRA COSTA, et al.,

          Defendants.

Case No. 21-cv-06419-JST

**ORDER GRANTING MOTION TO DISMISS; GRANTING LEAVE TO AMEND FOURTEENTH AMENDMENT CLAIM**

Re: ECF No. 29

Plaintiff, a pretrial detainee housed at West County Detention Facility, has filed this *pro se* action. Defendants have filed a motion to dismiss the first amended complaint, ECF No. 29; Plaintiff has filed an opposition, ECF No. 28, and Defendants have filed a reply in support of their motion, ECF No. 31. For the reasons set forth below, the Court GRANTS the motion to dismiss, ECF No. 29; GRANTS Plaintiff leave to amend the Fourteenth Amendment claim; and DISMISSES the remaining claims with prejudice.

**DISCUSSION**

**I.      Procedural Background**

Plaintiff commenced this *pro se* action by filing a complaint that the medical treatment provided by the County of Contra Costa, Contra Costa County doctor Jessica Standish, Contra Costa County doctor Elizabeth Hollandberry for his bloody bowel movements violated the Fourteenth Amendment's prohibition on deliberate indifference to a pretrial detainee's serious medical needs, the Bane Act, the obligation to summon medical care set forth in Cal. Gov't Code § 845.6, and constituted negligence. The complaint also alleged that the water and food provided by Contra Costa County to inmates causes ulcerative colitis because they contain high levels of acid. *See generally* ECF No. 1.

Defendants filed a motion to dismiss the complaint. ECF No. 17. The Court granted in part and denied in part the motion to dismiss in a reasoned order. The Court dismissed the negligence claim against Contra Costa County with prejudice, and dismissed the Cal. Gov't Code § 845.6 claim, the Fourteenth Amendment claim, the Bane Act claim, and the *Monell* claim with leave to amend. The Court declined to exercise supplemental jurisdiction over the sole remaining claim of state-law negligence because with the dismissal of the Fourteenth Amendment claim, the Court had dismissed all claims over which it had original jurisdiction. The Court therefore dismissed the entire action with leave to amend. ECF No. 25. Plaintiff filed an amended complaint. ECF No. 28.

## II.    Amended Complaint

The amended complaint again names as defendants the County of Contra Costa, Contra Costa County doctor Jessica Standish, and Contra Costa County doctor Elizabeth Hollandberry. The amended complaint also names as defendants fifteen Contra Costa County nurses, providing just their first names: Stephanie, Jackie, Malora, Andrea, Severa, Lizelle, Samira, Kurjinder, Valerie, Karima, Mark, Megan, Dan, Jen, and Gabriel. In the body of the complaint, the complaint also names Dr. Brett Curtis as a defendant.

The amended complaint makes the following factual allegations relevant to the named defendants. Since September 16, 2015, Plaintiff has been a pretrial detainee in the custody of Contra Costa County and housed at either Martinez Detention Facility ("MDF") or West County Detention Facility ("WCDF"). In mid-April 2020, Plaintiff began to have frequent bloody stools and rectal bleeding. Plaintiff informed jail medical staff of his condition and was told to report it if it got worse. For the next month, jail medical staff did nothing despite Plaintiff's attempts to get help.

In early May 2020, defendant Standish conducted an anal examination and determined that Plaintiff's bleeding was internal. She did not prescribe him any medication.

Starting in late May 2020, Plaintiff asked custody staff to document his interaction with medical staff, hoping that the Sheriff's Department could order the jail medical staff to treat him. From May 23, 2020 to June 24, 2020, jail records indicate that deputies informed nurses Jackie,

United States District Court
Northern District of California

1   Malora, Andrea, Severa, Lizelle, Samira and Kurjinder that Plaintiff was complaining of bloody

2   stools.  These defendant nurses did not come by to check Plaintiff's vitals or to offer him fluids to

3   avoid Plaintiff becoming dehydrated from chronic diarrhea.

4        In late June 2020, without examining Plaintiff, defendant Hollandberry concluded that

5   Plaintiff's bloody stools and rectal bleeding were caused by hemorrhoids, despite common

6   medical knowledge that chronic bloody diarrhea is not a common sign of hemorrhoids.

7        Plaintiff was scheduled for a colonoscopy on July 6, 2020.  As part of his colonoscopy

8   preparation, Plaintiff was instructed to maintain a liquid diet for several days and drink two

9   gallons of polyethylene glycol, trade name GoLytely, over two days.  Plaintiff was informed by

10  deputies who had undergone colonoscopies that drinking two gallons of polyethylene glycol was

11  too much, and inmates who read the instruction advised Plaintiff that the instruction said that

12  Plaintiff could stop taking GoLytely after his stool was watery and contained no solid matter.

13  Plaintiff had watery clear stool after finishing a gallon of GoLytely.  However, defendant nurses

14  Stephanie, Gabriel, Jen, and Dan insisted that Plaintiff finish all two gallons of GoLytely and

15  threatened to cancel his colonoscopy if he did not.  Plaintiff informed the nurses that he could not

16  finish the GoLytely because he was in severe abdominal pain.  Defendant nurses Stephanie,

17  Gabriel, Jen, and Dan cancelled his colonoscopy.

18       Plaintiff finally had a colonoscopy on July 30, 2020.  The colonoscopy was performed by

19  Dr. Haragrave, who also performed six biopsies during the colonoscopy.  Dr. Haragrave diagnosed

20  Plaintiff with moderate ulcerative colitis, and ordered Plaintiff to take an enema for ten days and

21  to take 4.8 grams of mesalamine daily.

22       At some point, Dr. Brett Curtis created a false medical record that states that Plaintiff had

23  been diagnosed with colon cancer at Stanford University and Marin General Hospital and never

24  received treatment.

25       Around February 8, 2021, Plaintiff learned that defendant nurse Valerie did not file copies

26  of Plaintiff's request to the medical department in his booking file, which a deputy identified as

27  illegitimate conduct.

28       On March 22, 2021, defendant nurse Karima altered Plaintiff's grievance complaining of a

3

United States District Court
Northern District of California

1  missed doctor's appointment on March 16, 2021 to state that it was a request, thereby preventing

2  the grievance from being reviewed by a superior officer.

3         On April 10, 2021, when distributing medication, defendant nurse Mark brought Plaintiff

4  his enema application with hydrocortisone and a bag with Subutex and the name Simon J listed on

5  the bag.

6         On April 18, 2021, defendant nurse Megan dumped medical waste from other inmates in

7  the bag containing Plaintiff's medication.  Defendant Megan took the bag back after realizing that

8  a deputy had witnessed her actions.

9         Plaintiff did not suffer from ulcerative colitis prior to his incarceration.

10        The amended complaint sets forth four legal causes of actions.

11        In the first claim for relief, the amended complaint alleges that defendants Standish,

12  Hollandberry, and Contra Costa County were deliberately indifferent to Plaintiff's serious medical

13  needs, in violation of the Fourteenth Amendment's prohibition on deliberate indifference to a

14  pretrial detainee's serious medical needs, when defendants Standish and Hollandberry failed to

15  provide medication or fluids to treat his condition and when they delayed treatment; when

16  defendant Hollandberry attempted to inflict medical torture on Plaintiff by insisting that he drink

17  two gallons of GoLytely; and when Contra Costa County jail medical staff failed to offer medical

18  treatment that is required as part of their job.

19        In the second claim for relief, the amended complaint alleges that defendants Contra Costa

20  County, Standish, Hollandberry, and jail medical staff used threats, intimidate, and coercion to

21  interfere with his state and federal constitutional rights and with state law, in violation of the Bane

22  Act, Cal. Civ. Code § 52.1, when they demanded that he drink two gallons of GoLytely prior to

23  his colonoscopy even though he was already having clear bowel movements and when they took

24  away his colonoscopy when he failed to do so.

25        In the third claim for relief, the amended complaint alleges that defendants Contra Costa

26  County, Standish, Hollandberry, and jail medical staff violated their duty to summon medical care,

27  as required by Cal. Gov't Code § 845.6, when they failed to treat Plaintiff's bloody bowel

28  movements and rectal bleeding by summoning medical or offering emergency care.

4

1      In the fourth claim for relief, the amended complaint alleges that defendants Contra Costa

2  County, CNA Mark, nurse Megan, and Dr. Brett Curtis denied him access to the courts, in

3  violation of the First Amendment, when they altered his medical records and contaminated his

4  medication in an attempt to portray Plaintiff as a drug addict with previous rectal bleeding issues.

5      The amended complaint seeks compensatory and punitive damages, lifetime compensation

6  for treatment of ulcerative colitis, and declaratory and injunctive relief.

**III.    Motion to Dismiss**

**A.    Legal Standard**

9      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

10  complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under the "notice pleading"

11  standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a short and

12  plain statement of the plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see*

13  *also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

14      "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal

15  theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta*

16  *Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint

17  will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is

18  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19      In making this determination, a court reviews the contents of the complaint, accepting all

20  factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party.

21  *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

22  2007). Notwithstanding this deference, the reviewing court need not accept as true conclusory

23  allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at

24  1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see*

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the

26  [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc.*

27  *v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-

28  pleaded factual allegations, a court should assume their veracity and then determine whether they

United States District Court
Northern District of California

5

plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir.2007) (citation and quotation marks omitted).

## B.     Analysis

Defendants argue that this action should be dismissed on the following grounds:  the amended complaint fails to state a violation of the Fourteenth Amendment; there is no Bane Act claim for inadequate medical care; there are insufficient allegations to support a California Government Code § 845.6 cause of action; Plaintiff did not exhaust his administrative remedies; and the amended complaint does not state a denial of access to the courts claim.  ECF No. 29.

### 1.     Defendant Contra Costa County

While the motion to dismiss does not address whether the amended complaint states a cognizable claim against defendant Contra Costa County, the Court may *sua sponte* address this issue pursuant to 28 U.S.C. § 1915A(a).  28 U.S.C. § 1915A(a) provides that a federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1).  The Court previously dismissed the original complaint's *Monell* claim against defendant Contra Costa County because the complaint's allegations were too conclusory.  The Court instructed Plaintiff that in order to hold a municipality liable, a municipal policy, practice, or custom must be the moving force behind a violation of constitutional rights, citing to *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  ECF No. 25 at 19-20.  The amended complaint fails to state a claim against defendant Contra Costa County.  The amended

6

1   complaint does not allege any policy, practice or custom that was the moving force behind the

2   alleged constitutional violations, i.e. the failure of seven nurses to check vitals and provide fluids

3   in a one-month period in response to a report of rectal bleeding; the failure of two doctors to

4   provide medication and fluids; the rescheduling of Plaintiff's colonoscopy for three weeks later

5   when Plaintiff refused to comply with colonoscopy prep directions because it was causing him

6   severe abdominal pain; alteration of his medical records; and contamination of his medication.

7   And, as discussed below, these actions did not violate the constitution.  Contra Costa County is

8   DISMISSED from this action for failure to state a *Monell* claim.  *See, e.g., Ellins v. City of Sierra*

9   *Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) ("Under *Monell [v. Dep't of Soc. Svcs.*, 436 U.S. 658

10   (1978)], municipalities are subject to damages under § 1983 in three situations: when the Plaintiff

11   was injured pursuant to an expressly adopted official policy, a long-standing practice or custom, or

12   the decision of a 'final policymaker.'")  The dismissal is with prejudice because Plaintiff has

13   previously been granted leave to amend the deficiencies in his claims against Contra Costa County

14   and has been unable to correct the deficiencies.

### 2.       Fourteenth Amendment Claim

16       Defendants allege that the amended complaint fails to correct the deficiencies identified in

17   the original complaint's Fourteenth Amendment claims.  ECF No. 29 at 10-12.  Plaintiff argues

18   that the amended complaint's allegations that it took staff three and a half months to diagnose his

19   ulcerative colitis and that staff insisted that he comply with an unreasonable medical request for

20   taking unneeded medication that caused him pain sufficiently allege deliberate indifference.  ECF

21   No. 30 at 2.

22       The Court dismissed the Fourteenth Amendment claim in the original complaint as

23   follows:

> Although the complaint alleges that Plaintiff was not provided any
> medical care, the complaint acknowledges that Plaintiff was seen by
> three doctors over the two to three month period, was monitored
> regularly by prison medical staff and deputies; and that he was
> provided a colonoscopy a little over two months after he first
> reported symptoms.
>
> . . .
>
> With respect to defendant Hollandberry, the only allegation against

United States District Court
Northern District of California

1

her is that, on an unspecified date, sometime between July 8, 2020
and July 30, 2020, defendant Hollandberry "wrongly dismissed
[Plaintiff's] complaint for hemorrhoids despite [Plaintiff]
complaining that the bleeding was internal" and that she "did
nothing to address [Plaintiff's] concerns further and were
deliberately indifferent to his medical need." Compl. at 7. Internal
bleeding can be caused by internal hemorrhoids, making defendant
Hollandberry's incorrect diagnosis, at most, negligence, which does
not state a Fourteenth Amendment claim. With respect to defendant
Standish, the only allegation against her is that she determined that
the source of [Plaintiff's bleeding was not from hemorrhoids, but in
fact internal but she "did nothing to address [Plaintiff's] concerns
further and were deliberately indifferent to his medical need."
Compl. at 7. . . .

With respect to defendant Contra Costa County, the only allegation
is the conclusory statement that defendant Contra Costa County "is
aware that the water or food it provides its prisoners contains high
levels of acid, causing ulcerative colitis or ulcerative colitis
symptoms to its prisoners." Compl. at 12. This naked assertion
devoid of further factual enhancement does not meet the pleading
requirement of Fed. R. Civ. P. 8 and therefore fails to state a
cognizable Fourteenth Amendment claim against defendant Contra
Costa County.

ECF No. 25 at 16-19.

The Court finds the amended complaint again fails to state a Fourteenth Amendment

violation.

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is

whether the conditions amount to punishment in violation of the Due Process Clause of the

Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). To prevail on a

claim that a prison official is deliberately indifferent to a pretrial detainee's safety, the detainee

must show that (1) the prison official made an intentional decision with respect to the conditions

under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at

substantial risk of suffering serious harm; (iii) the prison official did not take reasonable available

measures to abate that risk, even though a reasonable official in the circumstances would have

appreciated the high degree of risk involved—making the consequences of the prison official's

conduct obvious; and (iv) by not taking such measures, the prison official caused the pretrial

detainee's injuries. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-35 (9th Cir. 2018). With

respect to the third element, the prison official's conduct must be objectively unreasonable, a test

that will necessarily turn on the facts and circumstances of each particular case. *Id.* at 1125. "The

8

mere lack of due care by a state official does not violate the Fourteenth Amendment. *Id.* In other words, the pretrial detainee must "prove more than negligence but less than subjective intent— something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).

The amended complaint alleges that defendants Standish and Hollandberry violated the Fourteenth Amendment when they failed to provide medication or fluids to treat Plaintiff's condition and when they delayed treatment; when defendant Hollandberry attempted to inflict medical torture on Plaintiff by insisting that he drink two gallons of GoLytely; and when Contra Costa County jail medical staff failed to offer medical treatment that is required as part of their job. The last allegation presumably refers to the allegation that defendant nurses Jackie, Malora, Andrea, Severa, Lizelle, Samira and Kurjinder failed to respond to Plaintiff's complaint of bloody stools by checking his vitals or offering him fluids so that he would not be dehydrated from chronic diarrhea.

As an initial matter, it is unclear what injury Plaintiff has suffered. The amended complaint implies that the injury suffered is Plaintiff's ulcerative colitis, yet it is unclear how failure to offer medication and/or fluids, failure to check Plaintiff's vitals, and rescheduling Plaintiff's colonoscopy by three weeks caused the ulcerative colitis. Plaintiff has not identified a medication that treats ulcerative colitis or plausibly alleged how fluids would prevent or address ulcerative colitis.

The amended complaint's allegation that defendants Standish and Hollandberry failed to provide/prescribe medication and fluids fails to state a cognizable Fourteenth Amendment claim. The amended complaint does not explain how these failures put Plaintiff at a high degree of risk of suffering serious harm; what medication would address ulcerative colitis or otherwise address/resolve the internal bleeding; or how fluids would address ulcerative colitis or otherwise address/resolve the internal bleeding. It is also unclear what is meant by providing fluids, i.e., if Plaintiff believes that he required more fluids than he could access at the jail. And it is unclear how not providing fluids put Plaintiff at a high degree of risk of suffering serious harm.

The allegation that defendant Hollandberry attempted to inflict medical torture on Plaintiff by insisting that he drink two gallons of GoLytely also fails to state a Fourteenth Amendment

claim.  There is no allegation from which it can be reasonably inferred that drinking two gallons of GoLytely would put Plaintiff at substantial risk of suffering serious harm.  Plaintiff describes having severe abdominal pain from drinking GoLytely, and states that the directions stated that Plaintiff could stop drinking the GoLytely after he had watery stool without solid matter. However, there is no allegation that defendant Hollandberry knew that drinking more of the GoLytely than was listed on the instructions would put Plaintiff at substantial risk of suffering serious harm.  Nor was Defendant Hollandberry present when Plaintiff was experiencing severe abdominal pain.  It was nurses Stephanie, Gabriel, Jen, and Dan who insisted that Plaintiff fulfill defendant Hollandberry's instructions despite his complaints of pain.  Finally, it is unclear how defendant Hollandberry's instructions caused him injury beyond the abdominal pain.

The Fourteenth Amendment claim against defendant nurses Jackie, Malora, Andrea, Severa, Lizelle, Samira and Kurjinder also fails as a matter of law.  Failing to check Plaintiff's vitals or offer him fluids did not put Plaintiff at serious risk of substantial harm.  Plaintiff's vitals would not have put medical staff on notice of Plaintiff's ulcerative colitis.  To the extent that Plaintiff was at risk of dehydration from his bloody diarrhea, the dehydration alleged did not pose a substantial risk of serious harm to Plaintiff and it does not appear that Plaintiff needed fluids in addition to what he could access at the jail.

The Court GRANTS Defendants' motion to dismiss the Fourteenth Amendment claim. However, the Court GRANTS Plaintiff leave to amend this claim to address the identified deficiencies if he can truthfully do so.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (district court should grant leave to amend unless pleading could not possibly be cured by allegation of other facts).

### 3.    Bane Act

The Bane Act claim set forth in the amended complaint suffers from the same deficiencies as the Bane Act set forth in the initial complaint.

The initial complaint alleged conclusorily that Contra Costa County, doctor Standish, and doctor Hollandberry interfered with his federal constitutional rights by threats, intimidation, or coercion when they acted with deliberate indifference to his serious medical needs.  ECF No. 1 at

United States District Court
Northern District of California

4.  In his opposition to the initial motion to dismiss, Plaintiff stated that the coercive act was when nurse Stephanie cancelled Plaintiff's colonoscopy in response to his refusal to drink two gallons of GoLytely when his stool was already clear liquid and the medication caused him severe stomach pain, an allegation which was not presented in the initial complaint.  ECF No. 20 at 7-8.  The Court dismissed the Bane Act claim with leave to amend, finding that the complaint did not state a Bane Act claim because requiring Plaintiff to drink two gallons of GoLytely to preserve his colonoscopy appointment was, at most, negligence, and therefore was not "coercion, use of force, or intimidation."  ECF No. 25 at 14-16.

The amended complaint makes an allegation similar to the allegation made in Plaintiff's opposition to the motion to dismiss.  The amended complaint alleges that Contra Costa County, doctor Standish, doctor Hollandberry, and jail medical staff violated the Bane Act when they cancelled his colonoscopy appointment because he refused to drink two gallons of GoLytely when his stool was already clear liquid and the GoLytely caused him severe stomach pain.  Plaintiff argues that this allegation states a deliberate indifference claim because refusing to provide treatment unless an inmate complies with an unreasonable request constitutes deliberate indifference, citing to *Harrison v. Barkley*, 219 F.3d 132, 138 (2d. Cir. 2000).  *Barkley* is inapplicable there because Defendants did not deny Plaintiff the sought-after medical treatment, the colonoscopy.  In *Barkley*, prison officials conditioned treatment of a cavity in the plaintiff-inmate's tooth on the extraction of another tooth, which was diseased but which the plaintiff-inmate nevertheless wished to keep, and proceeded to deny dental treatment for over a year.  *Id.* at 134.  The Second Circuit held that prison officials are deliberately indifferent within the meaning of the Eighth Amendment if they (1) outright refuse treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) impose a seriously unreasonable condition on such treatment.  *Id.* at 138.  The amended complaint indicates that Plaintiff was provided the sought-after medical treatment – the colonoscopy – on July 30, 2020, even though he refused to drink two gallons of GoLytely.

The amended complaint fails to state a Bane Act claim because the underlying conduct did not violate the Fourteenth Amendment and because, as explained below, there was no violent act

United States District Court
Northern District of California

or injury.  The Bane Act, Cal. Civil Code § 52.1, "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"  *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).  The elements of a Bane Act claim are: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he or she exercised his or her constitutional right the defendant would commit violence against him or her or his or her property; (3) the defendant injured the plaintiff or the plaintiff's property to prevent him or her from exercising his or her constitutional right or retaliate against the plaintiff for having exercised his or her constitutional right; (4) the plaintiff was harmed; and (5) the defendant's actions were a substantial factor in causing the plaintiff's harm.  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007) (citing California's model Bane Act instruction, CACI Instruction No. 3066); *accord Lyall v. City of Los Angeles*, 807 F.3d 1178, 1195–96 (9th Cir. 2015).  The cancellation of Plaintiff's colonoscopy because Plaintiff had not complied with the colonoscopy preparation instructions was not a violent act and, as discussed above, Plaintiff ultimately received the colonoscopy, and the three-week delay in having Plaintiff's colonoscopy did not cause Plaintiff harm.  The Bane Act claim arising out of the July 5, 2020 decision to reschedule Plaintiff's colonoscopy is DISMISSED.  The dismissal is with prejudice because Plaintiff has previously been granted leave to amend this claim and has been unable to correct the deficiency.

### 4.    Cal. Gov't Code § 845.6 Claim

The Court dismissed the original complaint's Cal. Gov't Code § 845.6 claim with leave to amend because it was unclear what immediate medical care was needed because the original complaint merely stated conclusorily that Plaintiff frequently reported bloody stools and rectal bleeding to staff and they did nothing to address his concerns.  ECF No. 25 at 14.  In the amended complaint, Plaintiff specifies that defendants Contra Costa County, doctor Standish, doctor Hollandberry, and jail medical staff violated their duty to summon immediate medical care when they failed to take his vitals, offer fluids, or prescribe medication.  ECF No. 28 at 7-8, 13, 15.

Defendants argue that the amended complaint fails to state a cognizable Cal. Gov't Code §

845.6 claim because the amended complaint focuses on the manner in which care was provided

and Section 845.6 creates liability only in the limited instance where a public employee knows, or

has reason to know, of a need for immediate medical care and fails to summon such care.

Defendants further argue that California and its employees are not liable under Section 845.6 for

the manner in which medical care is provided, citing to *Castaneda v. Dep't. of Corr. & Rehab.*,

212 Cal.App.4th 1051, 1070 (Cal. Ct. App. 2013), and that a delay in care and diagnosis is

insufficient to state a Section 845.6 claim, citing *Watson v. Calif.*, 21 Cal. App. 4th 836, 841

(Cal. Ct. App. 1993).  ECF No. 29 at 13-14.  Plaintiff's only response to these arguments is the

single sentence: "There is sufficient information in the amended complaint to support an 845.6

violation."  ECF No. 30 at 3.  Defendants argue that Plaintiff's disagreement with the treatment

provided for his bloody stools and the timing of his colonoscopy does not constitute an actionable

failure to summon immediate medical care as contemplated by Section 845.6.

Defendants are correct that the amended complaint's allegations fail to state a California

Government Code § 845.6 claim.  California courts have clearly limited the scope of Section

845.6 to public employees' failure to summon immediate medical care and have excluded claims

based on the manner in which care was provided:

> Section 845.6 is very narrowly written to authorize a cause of action
> against a public entity for its employees' failure to summon
> immediate medical care only, not for certain employee's malpractice
> in providing that care.  The 1963 Law Revision Commission
> comments to section 845.6 clarify, "This section limits the duty to
> provide medical care for prisoners to cases where there is actual or
> constructive knowledge that the prisoner is in need of immediate
> medical care.  The standards of medical care to be provided to
> prisoners involve basic governmental policy that should not be
> subject to review in tort suits for damages."  (Cal. Law Revision
> Com. com., 32 West's Ann. Gov.Code (1980 ed.) § 845.6, p. 459,
> italics added.)  Thus, section 845.6 creates out of the general
> immunity a limited cause of action against a public entity for its
> employees' failure to summon immediate medical care only.
> (*Watson*, *supra*, 21 Cal.App.4th at p. 841, 26 Cal.Rptr.2d 262.)  The
> statute does not create liability of the public entity for malpractice in
> furnishing or obtaining that medical care.  (*Id.* at pp. 841–842, 26
> Cal.Rptr.2d 262; *see also Nelson v. State of California, supra*, 139
> Cal.App.3d at pp. 78–79, 188 Cal.Rptr. 479 [state liable for failure
> to summon medical care; medical malpractice causes of action may
> only be brought against employee providing care].)

. . .

California cases have repeatedly limited liability under the statute temporally "to serious and obvious medical conditions requiring immediate care." (*Watson*, *supra*, 21 Cal.App.4th at p. 841, 26 Cal.Rptr.2d 262; *see Kinney v. County of Contra Costa* (1970) 8 Cal.App.3d 761, 770, 87 Cal.Rptr. 638.)

*Castaneda*, 212 Cal. App. 4th at 1070–71, 1075. The amended complaint now specifies what "immediate medical care" Plaintiff believes was needed. The amended complaint alleges that jail medical staff should have immediately taken Plaintiff's vitals and provided fluids each time Plaintiff complained of rectal bleeding, and that defendants Standish and Hollandberry should have immediately prescribed medication and fluids. These allegations fail to state a need for immediate medical care. Plaintiff's rectal bleeding was not a serious and obvious medical condition requiring immediate medical care. Even if it were a serious and obvious medical condition, according to the amended complaint, each time Plaintiff complained of rectal bleeding, deputies notified medical staff. The medical staff's failure to take his vitals or provide him fluids concerns how medical care was provided (or not provided), not whether medical care was summoned. Similarly, the failure of defendants Standish and Hollandberry to prescribe medications and fluids concerns the medical care that was provided, not whether medical care was summoned. *Castaneda*, 212 Cal. App. 4th at 1074 ("Once summoned, the quality of medical care is a matter of medical policy and practice, imposing on medical practitioners a duty to exercise that degree of diligence, care, and skill possessed by other members of the profession, but it is not a violation of the employee's obligation to summon medical care under section 845.6."). The Court DISMISSES the Cal. Gov't Code § 845.6 claim. The dismissal is with prejudice because Plaintiff has previously been granted leave to amend this claim and has been unable to correct the deficiency.

### 5.      Denial of Access to the Court claim

Defendants argue that the amended complaint fails to state a cognizable denial of access to the courts claim because the amended complaint does not identify what First Amendment right is at stake and how it was denied by the alteration of his medical records and contamination of his medication. ECF No. 29 at 16-17. Plaintiff argues that Defendants' actions were intended to undermine his ability to successfully pursue this action by creating false evidence that Plaintiff's

14

1    condition was caused by drug use and rectal bleeding/health conditions that existed prior to

2    entering the custody of Contra Costa County.  ECF No. 30 at 4.

3           The Court finds that the amended complaint fails to state a cognizable claim for denial of

4    access to the courts because Plaintiff has not alleged, and cannot establish, actual injury.

5            To establish a claim for any violation of the right of access to the courts, the prisoner must

6    show that there was an inadequacy in the prison's legal access program that caused him an actual

7    injury.  *See Lewis v. Casey*, 518 U.S. 343, 350-55 (1996).  To demonstrate an actual injury, the

8    prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a

9    non-frivolous claim concerning his conviction or conditions of confinement.  *See id.* at 354-55.

10   With respect to a claim regarding active interference by prison officials, a prisoner alleges an

11   actual injury if, as a result of the defendants' alleged actions, his pending suit was dismissed.  *See*

12   *Silva v. Di Vittorio*, 658 F.3d 1090, 1103-04 (9th Cir. 2011), *overruled on other grounds as stated*

13   *by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  Actual injury is a jurisdictional

14   requirement that flows from the standing doctrine and may not be waived.  *Nev. Dep't of*

15   *Corrections v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349).  It is

16   "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a

17   filing deadline or to present a claim."  *Lewis*, 518 U.S. at 348.  Plaintiff has been able to file this

18   action, indicating that he has not suffered actual injury from the alleged actions of CNA Mark,

19   nurse Megan, and Dr. Brett Curtis.[1]  In addition, it is entirely speculative that the actions taken by

20   CNA Mark, nurse Megan, and Dr. Brett Curtis were intended to undermine Plaintiff's ability to

21

22   ───────────────
     [1] Moreover, even if this claim were cognizable, Plaintiff would be barred by Fed. R. Civ. P. 20's

23   joinder requirements from pursuing it in this action.  Rule 20(a)(2) provides that all persons "may
     be joined in one action as defendants if: (A) any right to relief is asserted against them jointly,

24   severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or
     series of transactions or occurrences; and (B) any question of law or fact common to all defendants

25   will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The upshot of these rules is that "multiple
     claims against a single party are fine, but Claim A against Defendant 1 should not be joined with

26   unrelated Claim B against Defendant 2."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).
     Plaintiff has no other claims against CNA Mark, nurse Megan, and Dr. Brett Curtis, and the access

27   to the courts claim does not arise out of the same transaction, occurrence, or series of transactions
     or occurrences, and does not share a common question of law or fact, as his other claims against

28   the other defendants.  To seek relief for claims against other defendants that arises out of other
     transactions and raise different questions of law, Plaintiff must bring a separate action.

United States District Court
Northern District of California

1

2

3

4

5

6

succeed in this litigation.  According to the exhibits attached to the complaint, Dr. Brett Curtis treated Plaintiff in January 2014, ECF No. 28 at 39, over seven years before Plaintiff commenced this action. CAN Mark and Nurse Megan allegedly tampered with Plaintiff's medication in April 2021, four months before this action was filed.  There is no indication that CNA Mark, nurse Megan, and Dr. Brett Curtis knew that Plaintiff intended to file suit regarding his medical treatment; much less acted with the intent to undermine Plaintiff's litigation.

7

### CONCLUSION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss.  ECF No. 25.  The Court DISMISSES the Fourteenth Amendment claim with leave to amend and DISMISSES Contra Costa County and the remaining claims with prejudice.  Within twenty-eight (28) days of the date of this order, Plaintiff shall file a second amended complaint that addresses the identified deficiencies in the Fourteenth Amendment claim.  The second amended complaint must include the caption and civil case number used in this order, Case No. C 21-06419 JST (PR) and the words "SECOND AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. An amended complaint completely replaces the previous complaints. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925 (9th Cir. 2012).  Accordingly, Plaintiff must include in his second amended complaint all the claims he wishes to present and all of the defendants he wishes to sue, and may not incorporate material from the prior complaints by reference.  Plaintiff may not re-allege the claims or re-name the defendants that the Court has dismissed with prejudice.  Failure to file a second amended complaint in accordance with this order in the time provided will result in dismissal of this action without further notice to Plaintiff.  The Clerk shall include two copies of the court's complaint form with a copy of this order to Plaintiff.

24

This order terminates ECF No. 29.

25

**IT IS SO ORDERED.**

26

Dated:  September 29, 2023

27

28

_____
JON S. TIGAR
United States District Judge