UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE SWANSON,<br><br>    Plaintiff,<br><br>v.<br><br>JESSICA STANDISH, et al.,<br><br>    Defendants. | Case No. 21-cv-06419-JST<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING LEAVE TO FILE THIRD AMENDED COMPLAINT; DENYING AS MOOT DEFENDANTS' REQUEST TO STRIKE; ADDRESSING MISCELLANEOUS FILINGS**<br><br>Re: ECF Nos. 51, 58, 59, 61-64 |

Plaintiff, a pretrial detainee housed at Martinez Detention Facility, has filed this *pro se* action. This order addresses the following pleadings: (1) Defendants' motion to dismiss the second amended complaint, ECF No. 51; (2) Plaintiff's proposed third amended complaint, ECF No. 62; (3) Defendants' motion to strike the proposed third amended complaint, ECF No. 63; (4) Plaintiff's letters docketed on March 8 and March 13, 2024, ECF Nos. 58, 59; (5) Jodie Dye-Jones' request that Plaintiff be appointed counsel, ECF No. 61.

**DISCUSSION**

**I.    Procedural Background**

Plaintiff commenced this *pro se* action by filing a complaint alleging that the medical treatment provided by Contra Costa County, Contra Costa County doctor Jessica Standish, and Contra Costa County doctor Elizabeth Hollandberry for his bloody bowel movements violated the Fourteenth Amendment's prohibition on deliberate indifference to a pretrial detainee's serious medical needs, the Bane Act, and the obligation to summon medical care set forth in Cal. Gov't Code § 845.6; and also constituted state-law negligence. The complaint also alleged that the water and food provided to Contra Costa County inmates causes ulcerative colitis because they contain

high levels of acid. *See generally* ECF No. 1. Defendants filed a motion to dismiss the complaint. ECF No. 17. The Court granted in part and denied in part the motion to dismiss in a reasoned order. The Court dismissed the negligence claim against Contra Costa County with prejudice, and dismissed the Cal. Gov't Code § 845.6 claim, the Fourteenth Amendment claim, the Bane Act claim, and the *Monell* claim with leave to amend. The Court declined to exercise supplemental jurisdiction over the sole remaining state-law negligence claim because, with the dismissal of the Fourteenth Amendment claim, the Court had dismissed all claims over which it had original jurisdiction. ECF No. 25.

Plaintiff filed an amended complaint. ECF No. 28. The amended complaint again named as defendants the County of Contra Costa, Contra Costa County doctor Jessica Standish, and Contra Costa County doctor Elizabeth Hollandberry. The amended complaint also named as defendants fifteen Contra Costa County nurses, providing just their first names: Stephanie, Jackie, Malora, Andrea, Severa, Lizelle, Samira, Kurjinder, Valerie, Karima, Mark, Megan, Dan, Jen, and Gabriel. The amended complaint set forth the following four claims for relief. First, defendants Standish, Hollandberry, and Contra Costa County were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Fourteenth Amendment, when defendants Standish and Hollandberry failed to provide medication or fluids to treat his bloody stools and when they rescheduled his colonoscopy because he did not finish the GoLytely; when defendant Hollandberry attempted to inflict medical torture on Plaintiff by insisting that he drink two gallons of GoLytely; and when Contra Costa County jail medical staff failed to check his vitals or offer fluids when he reported having bloody stools. Second, defendants Contra Costa County, Standish, Hollandberry, and jail medical staff used threats, intimidate, and coercion to interfere with Plaintiff's state and federal constitutional rights and with state law, in violation of the Bane Act, Cal. Civ. Code § 52.1, when they demanded that Plaintiff drink two gallons of GoLytely prior to his colonoscopy even though he was already having clear bowel movements and when they took away his colonoscopy when he failed to do so. Third, defendants Contra Costa County, Standish, Hollandberry, and jail medical staff violated their duty to summon medical care, as required by Cal. Gov't Code § 845.6, when they failed to treat Plaintiff's bloody bowel movements and rectal

bleeding by summoning medical or offering emergency care. Fourth, defendants Contra Costa County, CNA Mark, nurse Megan, and Dr. Brett Curtis denied him access to the courts, in violation of the First Amendment, when they altered his medical records and contaminated his medication in an attempt to portray Plaintiff as a drug addict with previous rectal bleeding issues. *See generally* ECF No. 28.

Defendants filed a motion to dismiss the amended complaint. The Court granted the motion to dismiss as follows. The Court dismissed Contra Costa County with prejudice because the amended complaint again failed to set forth allegations from which it could be reasonably inferred that the alleged violation of Plaintiff's constitutional rights resulted from a Contra Costa County policy, practice, or custom. The Court dismissed the Bane Act claim with prejudice because the amended complaint's allegations failed to state the elements of a Bane Act claim: the claim that Plaintiff's colonoscopy was cancelled because Plaintiff did not comply with the colonoscopy preparation instructions was not a violent act; Plaintiff ultimately received the colonoscopy; and the three-week delay in receiving the colonoscopy did not harm Plaintiff. The Court dismissed the Cal. Gov't Code § 845.6 claim with prejudice because the amended complaint challenged the manner in which care was provided, which is outside the scope of Section 845.6. The Court dismissed the denial of access to the courts claim with prejudice because the amended complaint did not allege, and could not establish, actual injury. The Court dismissed the Fourteenth Amendment claim with leave to amend, identifying the following deficiencies in the claim:

> As an initial matter, it is unclear what injury Plaintiff has suffered. The amended complaint implies that the injury suffered is Plaintiff's ulcerative colitis, yet it is unclear how failure to offer medication and/or fluids, failure to check Plaintiff's vitals, and rescheduling Plaintiff's colonoscopy by three weeks caused the ulcerative colitis. Plaintiff has not identified a medication that treats ulcerative colitis or plausibly alleged how fluids would prevent or address ulcerative colitis.
>
> The amended complaint's allegation that defendants Standish and Hollandberry failed to provide/prescribe medication and fluids fails to state a cognizable Fourteenth Amendment claim. The amended complaint does not explain how these failures put Plaintiff at a high degree of risk of suffering serious harm; what medication would address ulcerative colitis or otherwise address/resolve the internal

3

> bleeding; or how fluids would address ulcerative colitis or otherwise address/resolve the internal bleeding. It is also unclear what is meant by providing fluids, i.e., if Plaintiff believes that he required more fluids than he could access at the jail. And it is unclear how not providing fluids put Plaintiff at a high degree of risk of suffering serious harm.
>
> The allegation that defendant Hollandberry attempted to inflict medical torture on Plaintiff by insisting that he drink two gallons of GoLytely also fails to state a Fourteenth Amendment claim. There is no allegation from which it can be reasonably inferred that drinking two gallons of GoLytely would put Plaintiff at substantial risk of suffering serious harm. Plaintiff describes having severe abdominal pain from drinking GoLytely, and states that the directions stated that Plaintiff could stop drinking the GoLytely after he had watery stool without solid matter. However, there is no allegation that defendant Hollandberry knew that drinking more of the GoLytely than was listed on the instructions would put Plaintiff at substantial risk of suffering serious harm. Nor was Defendant Hollandberry present when Plaintiff was experiencing severe abdominal pain. It was nurses Stephanie, Gabriel, Jen, and Dan who insisted that Plaintiff fulfill defendant Hollandberry's instructions despite his complaints of pain. Finally, it is unclear how defendant Hollandberry's instructions caused him injury beyond the abdominal pain.
>
> The Fourteenth Amendment claim against defendant nurses Jackie, Malora, Andrea, Severa, Lizelle, Samira and Kurjinder also fails as a matter of law. Failing to check Plaintiff's vitals or offer him fluids did not put Plaintiff at serious risk of substantial harm. Plaintiff's vitals would not have put medical staff on notice of Plaintiff's ulcerative colitis. To the extent that Plaintiff was at risk of dehydration from his bloody diarrhea, the dehydration alleged did not pose a substantial risk of serious harm to Plaintiff and it does not appear that Plaintiff needed fluids in addition to what he could access at the jail.

ECF No. 41 at 9-10. The Court granted Plaintiff leave to amend the Fourteenth Amendment claim to address the identified deficiencies. *Id.*

**II.     Second Amended Complaint**

The second amended complaint ("SAC") again names as defendants Contra Costa County doctors Jessica Standish and Elizabeth Hollandberry, and the fifteen Contra Costa County nurses named in the amended complaint, providing just their first names: Stephanie, Jackie, Malora, Andrea, Severa, Lizelle, Samira, Kurjinder, Valerie, Karima, Mark, Megan, Dan, Jen, and Gabriel. In the body of the SAC, the SAC also names Dr. Brett Curtis and Dr. Lili Wang as defendants.

**A.     Factual Allegations**

The SAC makes the following factual allegations. In mid-April 2020, while housed in

4

Martinez Detention Facility, Plaintiff began to have frequent bloody diarrhea and rectal bleeding. Plaintiff informed jail medical staff of his condition and was told to keep medical staff updated if his condition worsened. For the next month, Plaintiff unsuccessfully attempted to get help from the jail medical staff.

In May 2020, defendant Standish conducted an anal examination, determined that Plaintiff's bleeding was internal, and did not prescribe any medications.

On May 26, June 2, and June 29, Plaintiff was taken to the Contra Costa Regional Medical Center ("CCRMC"), where he was examined by Dr. Lili Wang. Dr. Wang diagnosed Plaintiff with liver disease, and informed him that chronic bloody diarrhea is normal with aging. Dr. Wang did not prescribe any medications.

On May 24, 2020, custody staff notified defendant Jackie that Plaintiff had reported rectal bleeding and she did not respond. In June 2020, on six occasions, Plaintiff asked the custodial deputies to contact the MDF medical department "for any kind of medical assistance." On all six occasions, the medical staff never responded. Specifically, defendant Malora did not respond on June 2, 2020; defendant Andrea did not respond on June 3, 2020; defendant Severa did not respond on June 5, 2020; defendant Lizelle did not respond on June 9, 2020; defendant Samira did not respond on June 11, 2020; and defendant Kurjinder did not respond on June 24, 2020.

In late June 2020, defendant Hollandberry dismissed Plaintiff's condition as hemorrhoids without examining him. Around that same time, Plaintiff was advised that he was scheduled for a colonoscopy on July 6, 2020. To prepare for the colonoscopy, Plaintiff was put on a liquid diet and instructed to drink two gallons of GoLytely, a powerful laxative. During the time that Plaintiff was preparing for his colonoscopy, several deputies advised Plaintiff that drinking two gallons of GoLytely was too much to consume to prepare for a colonoscopy. Several inmates who read the GoLytely instructions advised Plaintiff that GoLytely consumption should stop when the user defecates clear watery fluid. After finishing about a gallon of GoLytely, Plaintiff "believes he developed clear watery stool." On July 5, 2020, Plaintiff was visited by defendants Stephanie, Gabriel, Jen and Dan, all of whom asked Plaintiff if he had finished two gallons of GoLytely. Plaintiff advised these defendants that he would not drink any more GoLytely because the

1    GoLytely was causing him severe abdominal pain and he already had clear watery fluid.  These
2    defendants advised Plaintiff that his colonoscopy would be cancelled if he did not finish all two
3    gallons.  Plaintiff did not finish the required two gallons and his colonoscopy was cancelled.

4           In mid-July 2020, custody staff intervened and got Plaintiff a colonoscopy.  On July 30,
5    2020, Plaintiff underwent a colonoscopy and six biopsies.  The attending physician, Dr. Thomas
6    Hargrave, diagnosed Plaintiff with ulcerative colitis, and prescribed him a daily enema for ten
7    days and 4.8 grams Mesalamine daily.  Dr. Hargrave stated that Plaintiff's condition could have
8    been prevented with Maalox.

9           In August 2020, Plaintiff was moved to West County Detention Facility ("WCDF"),
10   Building 4.  At WCDF, Plaintiff experienced deliberately indifferent medical treatment as follows.
11   On February 8, 2021, defendant Valerie told Plaintiff that she did not file his medical request in
12   his booking file because she was in charge of filing whatever she wanted in Plaintiff's booking
13   file.  Deputy Cain informed defendant Valerie that this inaction violated department policy which
14   required that all medical requests be recorded in an inmate's file.  On March 22, 2021, defendant
15   Karima changed the categorization of Plaintiff's grievance to a request, which prevented the
16   grievance from being reviewed by a supervisor.  On April 10, 2021, when distributing medication,
17   defendant Mark brought Plaintiff his enema bottle in a bag that also contained Subutex and was
18   labeled with the name "Simon J.," which is the name of an inmate housed in Building 8.  On April
19   18, 2021, defendant Megan dumped medical waste from other inmates in the bag that contained
20   Plaintiff's medication, and snatched the bag back from Plaintiff when she realized that Deputy
21   Allen was observing her.

22          Upon obtaining his medical file, Plaintiff learned that defendant Curtis has made a false
23   entry in his file.  Specifically, defendant Curtis falsely reported that Plaintiff had disclosed
24   stomach problems to doctors at Stanford University and Marin General Hospital.  Defendant
25   Curtis's action was an indication that WCDF medical staff are conscious of their guilt in failing to
26   provide Plaintiff with appropriate medical care because Defendant Curtis' action was an attempt
27   "to create the appear that [Plaintiff] was a drug addict whose lifestyle led to his illness" and "to
28   undercut any legal claim against the defendants."  ECF No. 50 at 12.

### B. Legal Cause of Action

The SAC alleges the following actions and inactions violated the Fourteenth Amendment because they were deliberate decisions that resulted in Plaintiff's condition "progress[ing] unnecessarily": (1) Defendants failed to respond to Plaintiff's request for medical assistance over a month-long period in April through May 2020; (2) defendants Standish, Hollandberry and Wang failed to prescribe medication; and (3) "non-responses by the other medical staff." ECF No. 50 at 10. Specifically, Defendants could have slowed the progression of Plaintiff's ulcerative colitis by "prioritizing [Plaintiff's] illness for treatment;" and their failure to "prioritize [Plaintiff's] chronic bloody diarrhea diagnosis and treatment" resulted in Plaintiff's ulcerative colitis progressing to an unnecessary advanced stage, and leaving him at greater risk for other diseases. ECF No. 50 at 11. Plaintiff seeks a declaration that Defendants violated his Fourteenth Amendment right to medical care; a declaration that the creation of a false medical record violated Cal. Bus. & Prof. Code § 2266; compensatory and punitive damages for Plaintiff's physical and emotional damages; and any other relief deemed appropriate. ECF No. 50 at 12-13.

## III. Motion to Dismiss

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a complaint must provide a short and plain statement of the plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see also Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

"[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party.

*See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint, *Paulsen*, 559 F.3d at 1071, and need not accept as true legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim does not suffice if it tenders only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

A court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (internal quotation marks and citation omitted). Indeed, a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks and citation omitted).

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

**B.  Parties' Briefing**

Defendants allege that the second amended complaint fails to plead a Fourteenth Amendment claim for the following reasons. First, Defendants argue that the second amended complaint repeats allegations made in prior complaints that the Court has already found fail to state a claim for deliberate indifference under the Fourteenth Amendment. Second, Defendants argue that Plaintiff's claim that he was denied care in April and May 2020 is contradicted by the allegations in the SAC that indicate that he was provided care during that time period. Specifically, the SAC alleges that medical staff advised Plaintiff to monitor his condition; that

8

1  defendant Standish examined Plaintiff in May and concluded that Plaintiff's bleeding was internal;
2  Plaintiff was seen at Contra Costa County Medical Center on May 26, June 2, and June 29, 2020
3  for medical evaluation; and Plaintiff was scheduled for a July 6, 2020 colonoscopy.  Third,
4  Defendants argue that Plaintiff's claim that defendants Standish and Hollandberry failed to
5  prescribe him medication fails to address the deficiencies identified by the Court in dismissing the
6  amended complaint, namely what medication was needed to address Plaintiff's condition.  Fourth,
7  Defendants argue that the SAC fails to state a claim against defendant Standish for her
8  examination and diagnosis of internal bleeding, as the diagnosis was correct and Plaintiff was
9  scheduled for a colonoscopy soon after being seen by defendant Standish.  Fourth, Defendants
10 argue that defendant nurses Jackie, Malora, Andrea, Severa, Lizelle, Samira, and Kurjinder's
11 alleged failure to respond to Plaintiff's requests for medical attention in May and June 2020 fails
12 to state a Fourteenth Amendment claim because Plaintiff was receiving other medical treatment
13 for his colon issue and had already been diagnosed with ulcerative colitis.  Fifth, Defendants argue
14 that the allegations that defendant nurse Valerie did not file a medical request in his booking file,
15 that defendant nurse Mark brought Plaintiff an enema bottle in a big that contained Subetex, and
16 that defendant nurse Megan dumped medical waste in the bag containing Plaintiff's medication
17 fail to state Fourteenth Amendment claims because Plaintiff does not allege how these actions
18 substantially increased Plaintiff's risk for ulcerative colitis or risk for harm.  Sixth, Defendants
19 argue that the allegation that nurses Stephanie, Gabriel, Jen and Dan told Plaintiff to finish two
20 liters of GoLytely fails to state a Fourteenth Amendment claim because the Court has previously
21 found that there is no allegation from which it can be reasonably inferred that drinking two gallons
22 of GoLytely would put Plaintiff at substantial risk of suffering serious harm.  *See generally* ECF
23 No. 51.
24         In his 2-page opposition, Plaintiff argues that not receiving medication constitutes a lack of
25 treatment.  He also provides the name and badge number of deputies that he states can testify as to
26 the defendants' behavior, and states that his account of the relevant events is corroborated by the
27 deputies' incident reports, referred to as "Red Book Notes."  Plaintiff attaches to his opposition a
28 newspaper article that he states show a pattern of deliberate indifference by Contra Costa County.

1    Finally, he argues that Defendants would consider it deliberate indifference if, for three-and-a-half
2    months, a doctor refused to provide treatment to a family member experiencing rectal bleeding.
3    Plaintiff attaches to his opposition the referenced article and "Red Book Notes" wherein deputies
4    recorded each time Plaintiff reported having rectal bleeding, and reporting that the deputies
5    notified nurses of Plaintiff's reports. *See generally* ECF No. 53.
6         In response, Defendants argue that Plaintiff's opposition consists of two arguments – that
7    the facts alleged in his SAC are true and that not receiving medication is a lack of treatment – and
8    that Plaintiff has otherwise failed to oppose the arguments and assertions in the motion to dismiss.
9    Defendants argue that the failure to oppose constitutes a waiver or abandonment of these issues,
10   warranting dismissal of these claims. Defendants argue that the Court must disregard the
11   attachments to the opposition because, on a motion to dismiss, the Court is limited to considering
12   the allegations in the pleadings, the complaint and attached exhibits, and matters properly subject
13   to judicial notice. *See generally* ECF No. 55.

    **C.     Analysis**

15        When a pretrial detainee challenges conditions of his confinement, the proper inquiry is
16   whether the conditions amount to punishment in violation of the Due Process Clause of the
17   Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). To prevail on a
18   claim that a prison official is deliberately indifferent to a pretrial detainee's safety, the detainee
19   must show that (1) the prison official made an intentional decision with respect to the conditions
20   under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at
21   substantial risk of suffering serious harm; (3) the prison official did not take reasonable available
22   measures to abate that risk, even though a reasonable official in the circumstances would have
23   appreciated the high degree of risk involved—making the consequences of the prison official's
24   conduct obvious; and (4) by not taking such measures, the prison official caused the pretrial
25   detainee's injuries. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-35 (9th Cir. 2018). With
26   respect to the third element, the prison official's conduct must be objectively unreasonable, a test
27   that will necessarily turn on the facts and circumstances of each particular case. *Id.* at 1125. "The
28   mere lack of due care by a state official does not violate the Fourteenth Amendment. *Id.* In other

1 words, the pretrial detainee must "prove more than negligence but less than subjective intent—
2 something akin to reckless disregard." *Id.* (internal quotation marks and citation omitted).
3 Applying this legal standard, the Court finds that the second amended complaint again fails to
4 state a claim for relief for the following reasons.

### 1.     Fourteenth Amendment Violation

The SAC alleges the following actions and inactions violated the Fourteenth Amendment: Defendants failed to respond to Plaintiff's request for medical assistance over a month-long period in April through May 2020, presumably when defendants Jackie, Malora, Andrea, Severa, Lizelle, Samira, and Kurjinder each did not respond on a single occasion to a request for "any kind of medical assistance;" defendants Standish and Wang failed to prescribe Plaintiff medications; and "non-responses by other medical staff."

In screening the prior complaints, the Court repeatedly found that vague allegations regarding a need for "medication" or "medical treatment" do not state Fourteenth Amendment violations because it is unclear what medication or medical treatment was needed but not provided. ECF Nos. 25, 41. There are no allegations from which it can be reasonably inferred that failing to provide unspecified medical attention or medication caused Plaintiff's ulcerative colitis to progress unnecessarily.

The SAC again fails to identify the medical assistance or medication that was needed but not provided that would have prevented Plaintiff's ulcerative colitis from progressing, and the Court is unaware of any medical treatment that prevents ulcerative colitis from progressing. The SAC claims that the medical community knows that ulcerative colitis progression but can be slowed, and cites to a medical study in support this claim. ECF No. 50 at 14. However, this study does not support Plaintiff's claim. Plaintiff incorrectly cites the title as "Early Intervention in Ulcerative Colitis Is Ready for Primetime." ECF No. 50 at 14. Rather, the study is titled "Early Intervention in Ulcerative Colitis: Ready for Prime Time?" and "summarize[s] the literature evidence on early intervention in patients with [ulcerative colitis], highlighting strengths and limitations of this approach," ultimately concluding that that the "available evidence **does not** support the early biologic intervention in [ulcerative colitis] patients . . ." *See*

11

http://mdpi.com/2077-0383/9/8/2646 (permalink at https://perma.cc/PXA5-WEDP) (last visited August 25, 2024) (emphasis added).  Moreover, this article explores whether there is evidence supporting the use of early biologic interview in patients with ulcerative colitis.  Given that Plaintiff was not diagnosed with ulcerative colitis until July 30, 2020, a reasonable official in Defendants' positions could not have known that they should have taken actions, including biologics, to slow the progression of Plaintiff's ulcerative colitis during the May through July 2020 time period.  In addition, the SAC acknowledges that Plaintiff was provided medical treatment promptly after he reported bloody diarrhea in mid-April 2020:  Plaintiff was seen by physicians twice in May 2020 and three times in June 2020; had a colonoscopy scheduled for early July 2020; and was monitored regularly by deputies and nurses.

**Defendants Jackie, Malora, Andrea, Severa, Lizelle, Samira, and Kurjinder.**  The Court cannot reasonably infer from the SAC's allegations that defendants Jackie, Malora, Andrea, Severa, Lizelle, Samira, and Kurjinder knew that failing to respond on a single occasion to Plaintiff's report of rectal bleeding put Plaintiff at substantial risk of suffering serious harm.  Plaintiff's rectal bleeding was an ongoing problem that he reported to medical staff via deputies multiple times a day, and Plaintiff was receiving medical treatment for the rectal bleeding (although not the type of medical treatment he thinks was needed).[1]  And, as discussed above, Plaintiff has not identified what medical attention was needed and not provided, and the record indicates that Plaintiff was receiving medical treatment for his reports of bloody diarrhea, albeit not at the pace or in the manner he believes would have been appropriate.

**Defendants Hollandberry and Wang.**  Defendants Hollandberry and Wang's failure to prescribe medication to Plaintiff during the April through June 2020 period does not state a Fourteenth Amendment claim.  Plaintiff does not specify what medication was needed, and the article he cites finds that there is no evidence supporting early intervention with biologics for ulcerative colitis patients.  And, as discussed above, the record indicates that Plaintiff was

---

[1] The medical records that Plaintiff attached as exhibits to his first amended complaint indicate Plaintiff had rectal bleeding on a near daily basis, and sometimes multiple times a day, and that he appears to have reported each instance of rectal bleeding to deputy staff with the directive that the rectal bleeding be reported to medical staff for attention.  ECF No. 28 at 25-35.

12

receiving medical treatment for his reports of bloody diarrhea, albeit not at the pace or in the manner he believes would have been appropriate.

**Defendants Stephanie, Gabriel, Jen and Dan.**  The allegation that defendants Stephanie, Gabriel, Jen, and Dan insisted that Plaintiff finish two gallons of GoLytely in order to proceed with his July 6, 2020 colonoscopy does not state a Fourteenth Amendment claim.  The Court has previously found that there is no allegation from which it can be reasonably inferred that drinking two gallons of GoLytely would put Plaintiff at substantial risk of serious harm.  ECF No. 41 at 10. Accordingly, the Court DISMISSES the claims against MDF nurses Stephanie, Gabriel, Jen, and Dan.  These claims are DISMISSED with prejudice as Plaintiff has repeatedly failed to cure deficiencies by amendments previously allowed.

**Defendants Valerie and Karima.**  The allegations that defendant Valerie refused to file a medical request in a booking file as required by department policy and that defendant Karima changing the categorization of Plaintiff's grievance to a request so that Plaintiff's grievance was not reviewed by a superior officer fail to state a Fourteenth Amendment claim for the following reasons.  First, there are no facts alleged from which it can be reasonably inferred that these actions put Plaintiff at substantial risk for serious harm.  Second, the failure to abide by jail regulations does not support a claim under section 1983, as Section 1983 only provides a cause of action for the deprivation of federally protected rights.  *Cf. Barrios v. Torres*, No. 1:20-CV-01234-ADA-CDB (PC), 2023 WL 2696657, at *3 (E.D. Cal. Mar. 29, 2023) (collecting cases that hold that failure to abide by statute statutes or prison regulations does not state claim under Section 1983).  Third, to the extent that Plaintiff was denied access to the prison grievance system due to defendant Karima's action, this fails to state a Section 1983 claim because a prisoner has no constitutional right to an effective grievance or appeal procedure.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner has no constitutional right to effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").  Fourth, these claims violate the joinder rule set forth in Fed. R. Civ. P. 20(a)(2).  Fed. R. Civ. P. 20(a)(2) provides that all persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them

13

1    jointly, severally, or in the alternative with respect to or arising out of the same transaction,

2    occurrence, or series of transactions or occurrences; and (B) any question of law or fact common

3    to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The upshot of these rules is

4    that "multiple claims against a single party are fine, but Claim A against Defendant 1 should not

5    be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th

6    Cir. 2007). The claims against defendants WCDF nurses Valerie and Karima arise out of different

7    occurrences than the alleged denial of medical care by the MDF defendants for Plaintiff's

8    ulcerative colitis.

9    **Defendants Mark and Megan.** The allegations that WCDF nurse Mark brought Plaintiff

10   his enema bottle in a bag that contained Subetex and appeared to be intended for another inmate,

11   and that WCDF nurse Megan dumped medical waste in a bag that contained Plaintiff's

12   medication, fail to state a Fourteenth Amendment violation for the following reasons. First, there

13   are no facts alleged from which it can be reasonably inferred that these actions put Plaintiff at

14   substantial risk for serious harm. Second, Plaintiff has not alleged that these actions caused him

15   injury. Third, these claims violate the joinder rule set forth in Fed. R. Civ. P. 20(a)(2) as these

16   claims arise out of different occurrences than the alleged denial of medical care by the MDF

17   defendants for Plaintiff's ulcerative colitis. Accordingly, the Court DISMISSES the claims

18   against WCDF nurses Mark and Megan.

19   **Defendant Curtis.** With respect to the claim against defendant Curtis, the Court

20   DISMISSES this claim with prejudice. As the Court noted in its order dismissing the amended

21   complaint, defendant doctor Curtis treated Plaintiff in January 2014, over seven years before

22   Plaintiff commenced this action. ECF No. 41 at 16 (citing to ECF No. 28 at 39). Even assuming

23   arguendo that, in 2014, defendant Curtis deliberately falsified his report of his examination of

24   Plaintiff, it is unclear how this false statement exposed Plaintiff to a substantial risk of serious

25   harm in 2020, and how such an incident is related to the alleged failure to treat Plaintiff's

26   ulcerative colitis while at MDF from May to July 2020. Accordingly, the Court DISMISSES the

27   claims against WCDF doctor Brett Curtis.

28   **Dismissal with Prejudice of Fourteenth Amendment Claim**. Plaintiff's vague

United States District Court
Northern District of California

contention, devoid of specifics, that he should have been provided with more medical treatment at a faster pace states, at most, a difference of opinion between a prisoner-patient and prison medical authorities regarding medical treatment, which does not give rise to a Section 1983 claim. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  The Court GRANTS Defendants' motion to dismiss the Fourteenth Amendment claims.  This dismissal is with prejudice, as Plaintiff has repeatedly failed to cure deficiencies by previously-allowed amendments.

### 2. State-Law Claim

With the dismissal of the Fourteenth Amendment claim, the only claim remaining in this action is the state-law claim that defendant Curtis violated Cal. Bus. & Prof. Code § 2266 by creating a false medical record.  The Court declines to exercise supplemental jurisdiction over this claim because the Court has dismissed all claims over which it has original jurisdiction.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)) (citation omitted) (original brackets) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").[2]

## IV. Plaintiff's Request for Leave to File Third Amended Complaint (ECF No. 62) and Defendants' Request to Strike ECF No. 62 (ECF No. 63)

Plaintiff has filed a complaint at ECF No. 62, which the Court construes as requesting leave to file a third amended complaint.[3]  Dkt. No. 62.  Fed. R. Civ. P. 15(a) is to be applied liberally in favor of amendments and, in general, leave shall be freely given when justice so

---

[2] In addition, the Court notes that this claim likely fails as a matter of law.  Violations of the Medical Practice Act, Cal. Bus. & Prof. Code § 2000 *et seq.* are enforced by the Medical Board of California.  To the extent that Plaintiff believes that defendant Curtis has violated the Medical Practice Act, he should file a complaint with the Medical Board of California.

[3] Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course no later than 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  However, in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  Plaintiff is beyond the deadlines set forth in Fed. R. Civ. P. 15(a), so he must obtain leave of court or written consent before he may file a third amended complaint.

15

1  requires. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). However, "a
2  district court need not grant leave to amend where the amendment: (1) prejudices the opposing
3  party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."
4  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). The Court
5  DENIES Plaintiff leave to file the proposed amended complaint because it fails to address the
6  deficiencies identified above and seeks to raise new claims that should be filed in a separate
7  action.

8        In the proposed third amended complaint, Plaintiff again sues defendants Standish and
9  Hollandberry, and names new defendants Martinez Detention Facility, West County Detention
10 Facility, Contra Costa County Sheriff David Livingston, and Contra Costa County Institution.
11 Plaintiff also seeks to add a co-plaintiff, inmate Scott Briar Collier, inmate number 2418510, in
12 this proposed third amended complaint. Dkt. No. 62 at 2. The proposed third amended complaint
13 makes the general allegation that he has been denied proper medical treatment by defendants
14 Standish, Hollandberry, and "all nurses from Contra Costa County institutional medical staff;" that
15 he has been bleeding for three years from his colon, which is "a failure of medical malpractice and
16 also with phycological (sic) and physical pain and suffering which violates my constitutional
17 rights;" and that the jail's use of a new mail system, Pigeonly, whereby inmates receive non-legal
18 mail electronically, violated his right to confidentially receive legal mail and P.C. 3999.9. ECF
19 No. 62 at 2-3. In a letter attached to the proposed third amended complaint, Plaintiff also alleges
20 that deputies have been threatened with losing their jobs should they assist him in printing out
21 "Red Book notes/documents." ECF No. 62 at 4-6. Plaintiff also requests that the Court forward
22 all the pleadings he has filed in this action to "appeal's judge's."

23       The proposed third amended complaint suffers from numerous deficiencies. First, to the
24 extent that Plaintiff is raising claims regarding the failure to treat his ulcerative colitis or
25 rectal/colon bleeding during the May to July 2020 period, the Court has already dismissed these
26 claims with prejudice for the reasons set forth above. Second, the proposed third amended
27 complaint is vague and conclusory. It does not specify what each individual did (or did not do)
28 that violated either federal law or the federal constitution. A general claim that Plaintiff was

16

1  denied proper medical treatment or suffered medical malpractice is insufficient to give a defendant
2  fair notice of what the claim is and the grounds upon which it rests, as is required by Fed. R. Civ.
3  P. 8.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).  Third, the proposed third
4  amended complaint violates the joinder rule set forth in Fed. R. Civ. P. 20(a)(2) because the
5  claims based on inadequate medical treatment arise out of a separate series of occurrences from,
6  and do not share any question or law of fact common to, the claims regarding Plaintiff's legal
7  mail.  If Plaintiff seeks relief regarding Contra Costa County's use of the Pigeonly mail service, he
8  must raise these claims in a separate action.

In light of the Court's denial of Plaintiff's request to file a third amended complaint, the Court DENIES as moot Defendants' motion to strike ECF No. 62.

**V.     Miscellaneous Filings (ECF Nos. 58, 59, 61, 64)**

Plaintiff and his girlfriend have filed pleadings with the Court at ECF Nos. 58, 59, 61, 64.  In ECF Nos. 58, 59, Plaintiff reports that he has not received mail from the Court; asks whether he will ever receive a trial or help; reports that he continues to experience rectal bleeding, will have to take pills and use a rectal enema bottle daily for the rest of this life, and that doctors have told him that the bleeding cannot be stopped; alleges that he was denied medical care and ignored for three-and-a-half months; alleges that doctors are interfering with his mail and his grievances; states that he is unwilling to sue the deputies because they are his witnesses; and states that he is only asking for full medical and full dental for the rest of his life, not monetary damages.  ECF Nos. 58, 59.  Plaintiff has attached to ECF No. 58 various inmate request forms that he has submitted to deputies complaining about his condition, writeups of his interactions with medical staff, and writeups regarding his belief that the medical care provided is inadequate.  ECF No. 58.  In ECF No. 61, docketed on March 15, 2024, Plaintiff's girlfriend, Jody Dye-Jones, who has submitted numerous declarations to the Court in this action, requests that the Court appoint Plaintiff counsel because Plaintiff's situation satisfies the exceptional circumstances requirement for the following reasons:  attorney Andrew Chan Kim filled out paperwork for Plaintiff to proceed *pro se* in this action without Plaintiff's consent; Mr. Kim abandoned Plaintiff; Plaintiff is incapable of representing himself because he has disabilities, is illiterate, cannot read or write, and does not

17

1  understand how to present himself in this action; Plaintiff was formerly assisted by another inmate
2  who cannot assist Plaintiff any longer; Ms. Dye-Jones has contacted numerous attorneys and law
3  firms and been unable to find counsel to represent Plaintiff; Plaintiff would win this case if he
4  were represented by counsel; and others have successfully sued Contra Costa County for the
5  conduct of which Plaintiff complains. ECF No. 61. In ECF No. 64, Ms. Dye-Jones states that she
6  has sent Plaintiff three pieces of legal mail, all of which had been returned to her with the
7  instructions that they should be sent to Pigeonly, and stating that two of these mail pieces had been
8  opened. ECF No. 64.

The Court has found that Plaintiff's claims regarding the medical treatment received for his ulcerative colitis during the May to July 2020 time period fail to state a Fourteenth Amendment violation. Plaintiff's allegations in ECF Nos. 58 and 59 are similar to the allegations presented in his complaints and do not change the Court's analysis. In light of the Court's dismissal of this action with prejudice, any request for appointment of counsel is moot.[4] If Plaintiff wishes to pursue his claims regarding Contra Costa County's mail policy and use of Pigeonly, Plaintiff must file a separate action. The Clerk is directed to send Plaintiff two copies of the Court's civil rights complaint form.

## CONCLUSION

For the reasons set forth above, the Court ORDERS as follows.

1. The Court GRANTS Defendants' motion to dismiss the second amended complaint. ECF No. 51.

2. The Court DENIES Plaintiff's request for leave to file a the proposed third amended complaint docketed at ECF No. 62. ECF No. 62. If Plaintiff wishes to pursue his claims regarding Contra Costa County's mail policy and use of Pigeonly, Plaintiff must file a separate action. The Clerk is directed to send Plaintiff two copies of the Court's civil rights complaint form.

3. The Court DENIES as moot Defendants' motion to strike ECF No. 62. ECF No.

---

[4] While the Court is sympathetic to Plaintiff's limitations, the Court cannot grant relief that is requested by a nonparty to this action.

63.

   4.  The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff, terminate all pending motions as moot, and close the case.

This order terminates ECF Nos. 51, 62, 63.

**IT IS SO ORDERED.**

Dated: August 26, 2024



                JON S. TIGAR
              United States District Judge